The main thrust of the opening brief of our argument was that the burden of proof was shifted to the defendant at trial to come forward with evidence basically to rebut the in the answering brief that the government doesn't really address the burden of proof fact at all. It says simply that the copy of the marriage contract was properly admitted. One problem with this argument is that it wasn't offered under 808, parenthesis 8, sub 3 at all. It was offered under 808-9, I believe. And therefore, all of the argument regarding, you know, saying that it could have been admissible under 808-8A, I'm sorry, is really not relevant. The main problem with this particular document was that it was offered for the truth of what it asserted that there was a valid marriage contract. This seems to me to be saying that if we have a document that says you're married, that's all the government has to introduce. That automatically, it would seem to me, says that that shifts the burden to the defendant to prove that it's not valid. And I don't believe that that is the case law. Once she has argued, brought up some evidence that she didn't believe it was valid. I believe that the government's burden then is to, the burden shifts back to the government to prove that it was valid. But that sort of burden shifting was never really recognized as an issue by the trial court. During the pretrial hearings, it seemed pretty clear that the court considered that it was a burden that the defendant had to meet, was to disprove the validity of this document. And counsel has not really, really addressed that. I believe that the presumption of regularity argument goes generally to things like finality of convictions, where you have a document of conviction. You know the parties, you know who you're dealing with. For instance, you know that a court does certain things regularly and if somebody is convicted, the document says so. Here we're dealing with a document from the Philippines and the signatures on the document are actually, we don't know anything about the people that signed the document except the defendant. Did both parties to the so-called marriage sign the document? I believe they did, but there was also. If she's impeaching her signature, why is it a error to require her to carry the burden of impeaching her signature and saying it's not mine? I don't believe that was the issue, Your Honor. The question was whether the document was. You've got an official government document with all the bells and whistles attached to it that they put on those things, and she comes in and says it's not legitimate. There were other signatures on the document, however, and the question was, that presented to the court here, was did the document show a valid marriage under Philippine law? How far back do you go behind the face of the document on the presumption that an official document was correctly entered and docketed and is what it says it is? I believe I should analogize to a document or a record that contains, that is not hearsay all by itself, but it also contains other declarants, things like other people's signatures, and those were never, those people were never confronted or questioned about whether. Well, there are birth certificates all over the place that have signatures of doctors and nurses and what have you on them, and then those people are all dead. Somebody wants to prove that they were born. What's wrong with using the presumption that these things were made the way they say they were made? I believe, Your Honor, that the question with this particular document was that it wasn't offered as a public record. It was offered under 808-9, I believe. Well, it was obtained through diplomatic channels, wasn't it? Well, it was obtained by... Through official channels. Right. Official channels. But I think 808-9, let me look here. Okay. 808-9, records of vital statistics, if report there was made in a public office pursuant to requirements of law. Now, the counsel doesn't really argue anything about this, but argues about that it fits under public record 803-8A, which the record has to set forth basically the activities of the office or agency, and this marriage contract doesn't do that. It sets forth something that somebody gave to the office, but doesn't set forth what the activities of the office that kept the document were. So I don't believe it's admissible under that at all. Well, if it would help her to have this document be legitimate, how would you answer the government challenge, saying, oh, well, this is a document that anybody can get and it isn't worth the paper it's faxed on? That's often what counsel argues on the other side when saying that a marriage is not valid, but I haven't researched that hypothetical because it's not valid. I wonder what happens to the presumption or what is the dignity of the presumption that official records are presumed to be what they are representative of? I believe, let me see. Two in a row is a little bit confusing. I think that there is something about the presumption that it's a prima facie proof, but it is not conclusive, and that's what's being argued here is that it is not only conclusive, but it's irrebuttable. Well, let me ask you a slightly different question. That is, the district court made alternative findings, partly based on the presumption, but then the court also made the alternative finding that the marriage contract in fact documented a valid marriage. And why is that finding clearly erroneous, given the fact that he heard testimony that he disbelieved Ms. Paulina's story and Paulina's story about ginning up the marriage for a salary purpose? He actually had conceded that he was married and they had the child within nine and a half months after that marriage. So completely putting aside the presumption of validity, why would the district court have clearly erred in simply finding that there was a valid marriage in 1985? Partly, I believe, because he didn't really, he wasn't asked to delve deeply into what made a Philippine marriage valid. And another thing, the reference to self-serving testimony and it not being acceptable basically comes from INS cases, which are administrative cases, not criminal ones, where it's the burden on the petitioner to prove that he or she is eligible for asylum or eligible for naturalization. And in this case, since it's not the burden of the defendant to put on any evidence at all, that those sorts of, that sort of reference to self-serving testimony is really inappropriate in this sort of case, because it's not an INS case. I think I'll, unless the court has any more questions right away. I don't think so. Let's, Mr. Poirier first, and then we'll come back to you. Good morning, Your Honors. I'm Elisa Cordell, Mayor Poirier for the United States. The reason why in the government's brief it started with the admission of the document was precisely because it did seem from the defense arguments that there was some confusion over whether it was properly admitted. And in this case, it was admitted in precisely the way that you admit foreign documents. There are certainly cases in which I've tried where I've thought, gee, you know, if I had to do it over again, I would do it differently. I'm at a loss to think how I would do it differently in this case. What we had is the document was certified by the archivist in the Philippines, then the consular office signed the appropriate certification saying, I recognize the certificate of this archivist, he's the archivist, and it had the appropriate seals and certifications. And I don't know, I don't really understand what the defense argument is as to why the hearsay rules and the authentication rules weren't followed. Alternatively, it does come in as a vital statistic record, and I beg to differ with the appellant's counsel over whether if a document is properly admitted, that the court of appeals is restricted to the reason why it was offered. I think the law is actually the opposite from that. Looking at the marriage contract itself, the court brought up the question of whether she was impeached on her signature. In fact, she admitted it was her signature. There was no dispute that it was her signature. There was no dispute that it was his signature. What they were saying was that we didn't have a certificate. The finding of exceptional circumstances is wrong because we didn't live together for five years before getting married. So if you distill the defense argument, the burden of proof should have been on the government to prove that these two people lived together for five years and that therefore their marriage was valid. If the presumption of regularity means that the government has to go that far, then it means nothing and is of no assistance to the courts in trying to conduct business. So it can't, however far you require to delve, it can't be that you have to delve that far. With respect to the alternative findings, again, the fact that these were self-serving statements has every bit as much relevance in a criminal proceeding as it does, I mean I'm not frankly sure on the immigration proceeding exactly how that would cut. I'm not an immigration lawyer. But certainly in a criminal trial, whether it's a jury trial or a bench trial, one of the considerations people use in credibility is what is the interest of this person in making this statement? And the fact that it's a self-serving statement that's unsupported by anything is something that's considered by judges and juries in criminal cases every day. So I disagree with the suggestion that the judge somehow acted inappropriately in noting that it was a self-serving statement. Further, I think it is also incorrect to characterize the judge as not delving into the contract. Although he believed, and made the finding that the government's position regarding the presumption of regularity was correct, he examined the issue of Philippine law, discussed whether if what the defendant said it would be void or voidable under Philippine law. The issue of Philippine law was briefed. He considered the defendant's explanation of why they were asserting that this marriage was improper and ultimately rejected it. And the response to that is, well, the judge just can't reject it, and it is the appellant who is confusing the matter with immigration law cases and with citations to what an immigration law judge can or cannot do. Is Rule 52 applicable to the trial judge's findings in this kind of a case? Your Honor, I'm having... Well, the rule... I apologize, I'm blanking out. The trial judge's findings on credibility and findings of fact are presumed on appeal to be correct unless shown to be clearly erroneous. Yes. I was just blanking on the rule there, and I'm sorry. I shouldn't talk Arabic. No, I should recognize that, and I just blanked. But I think they are presumed, and I think that it is not appropriate to say that because there's immigration issues that somehow this transmogrifies into an immigration hearing, and the role of the finder of fact in making credibility determinations, watching the witnesses testify, is somehow gone further. Even if we had some kind of standard where it was the government had to come forward and say, yeah, this is how we support the judge's finding, there's a lot of support for the judge finding that these witnesses were not credible. For one thing, no matter how you take their story, they have to be lying somewhere. It's the classic situation of are you lying now or are you lying then? If you accept their story, they went through this elaborate charade and lied to various people in terms of getting that document. More significantly, the story they told at trial doesn't make sense. They said that they went through this elaborate proceeding because he had a job overseas and wanted to send the check to his then girlfriend. He said that he needed to do that because he didn't trust his father and that his mother would be, yeah, he didn't trust his father. He did trust his mother, but that his father would be offended if he sent it to his mother, so therefore he had to send it to his girlfriend, but the company wouldn't let him send it to his girlfriend, so he had to show he was married. Rather than getting a false document, which if you were going to do that would seem to be the most sensible, he visits someone, comes up with the idea of having an apparently legal but defective marriage, and then when asked about it, he said that he never actually sent the marriage certificate to the company, that it turned out not to be necessary. It's not a story that even told on an appellate version, much less actually hearing it in court, which inspires a great deal of credibility. So I think that the judge was absolutely correct in his finding about credibility. He did make the alternative finding, and it's the government's position that in both, there is a presumption of regularity, and that under the circumstances, he could have considered the marriage contract as enough without delving behind it, but that in fact he made the alternative findings. He considered all the evidence. He didn't shut the defense out from trying to do that, and the government believes that the judge's decision was correct and out of respect. Thank you. Yes. Thank you. Thank you. Contrary to counsel's argument, we didn't introduce the INS cases to confuse. It just seems that counsel believes that somehow that the burden on the government in a criminal case is somehow less than in an INS case, and that's completely backwards. About the validity of the document as showing a valid marriage, under Philippine law, the Philippine law requires a license, not a contract, and also requires that the signatures of all the people who are on the document be present at the ceremony or whatever, or that the people have been living together for five years before they signed the document. As far as I know, the government didn't really look to the affidavits. And I would like to go again to say that the question here is not really whether there was support for the judgment, whether there was support for the judge's findings of the fact, but whether the burden had been shifted to the defendant to prove anything. Given, you know, in this scenario, once the government had introduced this document, it seems to me that without testimony, and a criminal defendant doesn't have to testify, unless there's an affirmative defense, an affirmative requirement that you rebut something, which is not the case here. The prima facie evidence is used as evidence beyond a reasonable doubt, and if the defendant can't come up with a reasonable doubt according to this particular scenario. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Goodwin, Rymer, Tg Nelson